JUDGE TUCKER,
(after stating the case as above,)(1) proceeded: The question upon this bill of exceptions is, how far the doctrine of apportionment applies to this particular case. It seems clear from the books, that there shall be no apportionment of a rent-charge, in some cases in which a rent-service, may be apportioned, (h) As if A., having a rent-service, purchase part of the lands, the rent shall be apportioned: but if he had had a rent-charge to him and his heirs, and had purchased a part of -the lands, the whole rent should have been extinguished, (i) But if the rent-service be indivisible, as a horse, or a hawk, there could be no apportionment; but if the lessor purchase a part, the whole was thereby extinct, (k) But, in general, a rent-service might be apportioned, either by a grant of a part of the reversion :(l) or, by a devise *735 to two or more persons: (a) or by a surrender of part of the lands, or forfeiture of part:(b) or by the lessor’s taking1 a lease of part:(c) or where a part is lost by the act of God; as in case of overflowing, or of wildfire :(d) or by act of law; as, if a moiety of the reversion be extended ¿>3r elegit; or dower be assigned therein; or a part of the land be evicted by a stranger, (e) And this apportionment shall be made bya, jury;(f) and upon the plea of nil debet. (g)
But the doctrine of apportionment, as far as I can discover, does not appear to have been clearly settled, where a man makes a lease for years of land, and a stock of sheep, &c. or leases a house with the furniture in it, reserving one *entire sum of monej' as rent for the same. In the case of Read v. Lowens et ux. (h) the lessor of land and divers implements with it, entered on his lessee and made a feoffment thereof, and then the lessee re-entered; and it was held that the feoffee might bring debt for the whole rent, and that there should be no apportionment; for it was said that, although the feoffee should not have the implements, still the lessee is not disturbed in his interest in them, but shall enjoy them during the term, and then the lessor shall have them again, and there shall be no apportionment of the rent in this case, where there is no eviction of them by an elder title; but the rent above shall follow the reversion of the land, which is more worthy, and not the reversion of chattels. But the defendants brought a writ of error, and the reporter makes a quaere of the event thereof. In Richard le Taverner’s case,(i) a man made a lease for years of land, and of a stock of sheep, rendering a certain rent, and all the sheep died. And there were different opinions, whether, even in this case, there should be any apportionment. But it is there said it would have been otherwise, if a part had been recovered or evicted by an elder title. And with that the Year Book, 12 H. VIII. c. 11, pl. S, seems to agree; for it is there said to have been agreed, that, if one make a lease of lands and goods, and the lands are recovered against him, he shall hold the goods to the end of the term, and the rent shall be apportioned. And therewith Brooke’s Abr. tit. Apportionment, pi. 24, agrees. And yet Cord Ch. Baron Gilbert puts this very case in his Treatise on Rents, p. 176, and says, there shall be no apportionment, but the lessee shall enjoy the goods during the term, without paying any rent.
Where authorities are uncertain and contradictory, we must have recourse to principle as our guide.
Bord Ch. Baron Gilbert, in his Treatise on Rents, p. 187, 188, says, if a lease be made of land with a stock of sheep and the sheep all die, (as in 1 Dyer, 56,) it seems doubtful whether the rent shall be apportioned, or the lessee obliged to pay the whole rent: for though it may well be presumed *that the rent was advanced upon account of the profits which arise from the sheep, &c. yet, since the rent is taken to be issuing only out of the land, because that, in its nature immovable, is still subject to the distress, (which sheep are no longer than they are on the land,) it may be doubted whether the rent shall be abated while the tenant enjoys all the land, out of which the rent issues, and then adds quaere. I confess there is nothing in this that affords any reason to my mind why the rent should not be apportioned in such a case: for though it is admitted that sheep are no longer liable to distress for rent, than while they are upon the land, yet it must also be admitted that the land itself is never subject to distress; to which nothing is liable but what is upon the land, and not the land itself. Besides, whatever difficulty there may be in apiportioning the rent in case of a distress made, in such a case, a jury of farmers, in an action of debt, in the like case, would probably be able, very easily to estimate the profits which might have arisen from the stock of sheep, if they had not all died; which if it happened not through the default of the tenant, (of which the Jury were to judge from the evidence before them,) might furnish a strong- argument in favour of an apportionment of the rent, though a sum in gross were reserved. The difficulty of the apportionment in this case perhaps might not be greater than where a tenant should surrender, or forfeit a part of the lands demised ; in both which cases it is admitted there ought to be an apportionment: and that in proportion to the value of the part surrendered or forfeited, compared with the part retained, and not in proportion to the number of acres, (k) In the case before us, if the tenant had been evicted of the 200 acres of land adjoining the mill, but not of the mill itself, or vice versa, the rent should have been .apportioned according to the real value of that which remained in his hands. Why might not the Jury, upon similar principles, have apportioned the loss which the tenant sustained by the departure of the miller, if he were content to have a deduction for the same made in lhat way, according to the value of the miller’s hire, *instead of bringing a special action for damages, (as perhaps he might have done,) as well as in the other case? Such a course, if it had been permitted, would equally tend to avoid circuity of action, and multiplicity of suits. (l) And though I acknowledge that I have found no case expressly in favour of the opinion I entertain, yet on the most mature consideration, I think the evidence should have been permitted to go the Jury.
But it was argued at the bar, that Newton ought to have detained the miller in his service until he had recovered his freedom by a suit. — I am of a different opinion. The miller having been emancipated in due form of law, and the deed of emancipation recorded, that, alone, was conclusive evidence that he was not the slave of Wilson, by whom the deed was made. He *736 would have committed a trespass, for which he ought to have been mulcted in exemplary damages, if he had attempted to detain a freeman as a slave, of whose freedom he had such incontrovertible evidence. The plaintiff, therefore, in my opinion, has no cause of complaint on these grounds.
There is another error, which, since the decision in Cooke v. Wise, must not pass over without attention. This is an action of debt for rent-arrear; and the jury have given 35 dollars and'57 cents, damages, which must be by way of interest upon the rent, for no other cause of action is shewn. This therefore is error: and, for this reason as well as the former, there ought, I think, to be a new trial. There is another error which strikes me. The declaration demands 400 dollars debt. The Jury find for the plaintiff 368 dollars only, and say nothing of the residue. This error, however, being in favour of the defendant, he cannot have advantage of it. Perhaps the plaintiff, had he been so disposed, might have reversed the judgment on that ground, (a) Upon the whole, my opinion is, that there should be a new trial, with instructions to admit the evidence rejected; and that, if the Jury see cause to apportion the rent, they may do so, or otherwise in their discretion ; and that no damages by way of interest ought to be given.
* JUDGES ROANE and FEEMING concurred in opinion, that the judgment was erroneous in allowing damages on the rent, and that the District Court also erred in rejecting the evidence.
Judgment reversed with costs.
The next day (March 31), the above order, together with that in the case of Cooke v. Wise, entered Thursday, 23d of March, (ante, p. 468,) was set aside on the motion of Judge Roane who declared himself not fully satisfied with the principle then about to be settled, and requested time for farther consideration.
Cooke v. Wise, and Newton v. Wilson.

(After reconsideration.)

Wednesday, May 17, 1809. The Judges, on this day, delivered their opinions, on the question whether interest could be awarded by way of damages in an action of debt for rent-arrear.
JUDGE TUCKER. The question which the Court on the last day of the preceding term resolved to consider, is, whether in these cases, which were actions of debt for rent-arrear, the Jury erred in giving interest by way of damages upon the sum found to be due for rent.
This question depends partly upon the nature of the thing demanded, which is rent; and partly upon the nature of the action, which is brought for the recovery of it. Some consideration is also due to the nature of interest and damages, according to the principles of the common law.
Rent signifies a compensation or return ; it being in the nature of an acknowledgment given for some corporeal inheritance, (b) And though, of late years, it usually consists in money, yet it did formerly, and still may consist in other things incapable of any profit, as spurs, capons, horses, corn, &c. or in services, or manual operations, as in doing suit at the Eord’s Court, or ploughing his lands, &c. the remedy for all which, if withheld, when it ought to be paid, is by Mistress ; and that, of common right, provided the lord or lessor hath in himself the reversion, after the expiration of the lease, (c) It is uneces-sary to enter into a consideration of the doctrine of distresses; suffice it to say that the remedy was complete and in the hands of the landlord himself, if there were any thing upon the lands which might be dis-trained. If, by the fraud of the tenant, in eloigning from the lands what might be subject to distress for rent, the landlord was in danger of losing his remedy, the common law permitted him to follow the goods, if he had sight of them; and the statute law has enlarged his remedy by unauthoriz-ing a distress upon goods fraudulently removed from the premises, at any time within ten days after their removal. Or, if the goods distrained were rescued, or re-plevied, the law gave him an adequate remedy for the rent-arrear, and damages for the interruption or withholding the payment. To these the action of debt was superadded in certain cases, by the common law; and that remedy has been still further extended by statutory provisions. It is, however, proper to remark, that in all cases, as far as I can discover, where any statute has given damages, either for interruption to the common law remedy, or bjr way of compensation for' the delay of payment of the rent, the measure of the damages is fixed by the statute itself. Thus, if the tenant be guilty of any pound-breach or rescous, the party grieved is entitled to recover treble damages: if he contests the landlord's right to distrain, by suing out a wfit of replevin, the damages are double the -value of the rent-arrear.. But if he avails himself of the indulgence of the law, only, by giving bond and security for the payment at the end of three months, the measure of the damages cannot exceed lawful interest on the sum due, with all costs; and this by a summary proceeding upon ten days’ notice: the reason of which seems to be, that the remedy of the landlord is superseded by the indulgence which the law gives the tenant, upon his giving sufficient security to pay the rent in a short time; it therefore gives interest for the delay of payment, from the time that his remedy by distress has been actually superseded; that is, from the Mate of the bond; without regard to the period that the rent may have been due, although the distress should not have been made till the utmost period which the law allows, which is five 3rears. Nor, even in such a case, could the -landlord distrain for one penny beyond the rent actually in arrear. All which seems to prove that the landlord is neither by the common law, nor by a statute, entitled to interest upon rent-arrear, merely on the account of the same remaining unpaid. And there are certain principles of the common law which appears to me strongly to corroborate this conclusion. For no *737 man shall take advantage of his own laches or neglect; therefore the landlord shall not have interest for rent-arrear, because he has an effectual remedy in his own hands, whenever disposed to use it. Again, the land is in law the principle debtor, and the person of the lessee is no debtor but in respect of the land, (a) Rent service, where it consisted either in personal or manual operations, or in unproductive things, as capons, spurs, bows, shafts, roses, and other articles, enumerated by Sir Ed. Coke, was not of a nature to yield any profit growing out of the thing itself, in the nature of interest. And, if they happened to be uncertain, the lord could neither dis-train nor recover damages for the withholding them, (b) By the common law, interest, under the odious name of usury, was altogether prohibited; consequently it could not be recovered in the common law courts, for the mere detention, or delay of payment of a debt, however just, or how unreasonably soever the payment might have been delayed. And upon this principle it seems to be, that, in action of debt, the damages are in general merely nominal, (c) And, even in replevin at common law, it would seem that the rent is to be regarded as the certain measure of the damages;(d) nor was the remedy, by action of debt, applicable to all cases of rent-arrear. (e) And, although the remedy by action of debt has been extended by stat. 32 H. VIII. c. 37, and subsequent statutes both here and in England, it seems to authorise the recovery of arrearages only, and not interest or damages for withholding them; for Sir Ed. Coke ex-pressly tells us, for the arrearages *of a nomine poeme, and for relief, &c. the statute gives no remedy, (f) To this we may add, that rent is regularly demandable, by the payee or landlord, upon the lands, (unless there be some special reservation in the lease to the contrary,) whereas, a debtor by bond or obligation, is bound to seek his creditor, if he means to save the forfeiture of his bond; but in the case of the tenant, until demand made, no forfeiture or penalty (although secured by a nomine pcense) could be incurred; for the presumption of the common law is, that the tenant is always upon the lands, ready to pay his money, and the contrary must be alleged and shewn or no penalty is incurred, (g) And the reason for this is apparent. Eor the landlord may have granted the premises to another, in which case his right to the rent is gone and extinguished; and the tenant, since attornment is no longer necessary, may not know to whom to offer his rent; or he may have paid it, before notice, to his former landlord, in which case, the law acquits him from all damage, (h) Or the lessor may have granted away a part of the tenements demised to a stranger, in which case the rent must be apportioned; or the tenant may have been evicted of the lands, and so the rent Utterly extinguished. Nay more, it has been resolved, “that where a rent was reserved upon a lease, and the lessee bound by obligation to pay it, although the lessee must pay it without demand, yet he is not bound to seek the lessor, but to render it only upon the land ; for he has bound himself to pay it, but still as a rent, and where the law will.”(i) So far the principles of the common law (and it is to be remembered we are now to decide as a court of common law) appear to me to be strongly opposed to the giving interest in the name of damages, in an action of debt for rent-arrear. But some cases, both in England and in this Court, may be supposed to militate against them. The case of Ross v. Gill, (k) was an action of debt in which the sum of 4901. was demanded in the declaration for seven years’ rent, at 701. per ann. in arrear. The Jury found the debt in the declaration mentioned, and 1301. 16s. 3d. damages; the Court (upon what ground does not appear in the report of the case) gave judgment *for 4201. only, which is less than the arrears demanded. How the judgment came to be entered in that manner, I cannot conceive; but this Court seemed to think the error was in favour of the appellants and therefore affirmed the judgment. There is not a word apout interest, either in the arguments at bar, or in the opinion of the Court, This case, therefore, furnishes no precedent, I conceive. The subject passed utterly sub silentio. Watson v. Alexander(l) was an action of covenant, not debt. The suit was brought by the devisee of the lands, and not by the executors who made the lease. The breach assigned was the nonpayment of nine years’ rent, at 781. 10s. per ann. reserved upon a lease made during the paper-money period. The Jury found a verdict for the plaintiff, and assessed his damages to 6261. instead of 7061. 10s. the nominal amount of the arrears demanded, subject to the opinion of the Court on a point of law, respecting the kind of money in which the rent was to have been paid. The damages, in which form alone the verdict must be rendered, are not equal to the arrears of the rent demanded. Consequently, this case, so far, furnishes no precedent. But the President, in delivering the opinion of the Court, uses an expression which carries with it a strong presumption that the opinion of the Court was, that the Jury could not have given interest by way of damages, if that had been (as this is) an action of debt instead of covenant: for he says, ‘ ‘In this case, which is not an action of debt for rent certain, but of covenant for damages to be ascertained by a Jury, the Jury might, upon evidence of the intention of the parties, increase or diminish the damages; and these they might find in specie, and so determine the question (as to the kind of money) by a general verdict.” This, I think, strongly shews the opinion of the Court as applicable to the case now before us. The case of M’Call v. *738 Turner, (a) seems to me to have no particu .lar bearing upon the present case. The •Court of the Commonwealth had been perplexed with questions concerning the recovery of debts due to British subjects antecedent to the war; to bring them to a point, it was recommended by the District Court of King and Queen, to the *har, to give the notice mentioned in the report of that case, and to leave it to the Jury to decide upon the principles of common sense, and common reason, how far the absence of a creditor, who was moreover an alien enemy during the period of his absence, could be admitted as a ground of stopping the accumulation of interest during that period. This Court approved of the course recommended, and of the result. It was a case, sui generis, in form, though founded upon the clearest principles of moral justice; and the sanction which it received in this Court, probably proceeded, in part, from the difficulty of bringing on the question for a judicial decision, in any way whatever. The most that can be said of that case is, that the jury did not mistake the law; it being a settled principle of the law, that where the jury mistake the law, the verdict shall be set aside. The question now before us is, have the jury mistaken the law, in giving interest by way of damages, for arrears of rent? If they have, the verdict must be set aside as against law. Dor, “ad questionem legis non respondent Juratores, sed Judices.”
But it may be objected that a Jury may, and frequently do, give interest for book debts, and other simple contract debts; and why not also for rent-arrear? With respect to these, the general rule is, that the Jury cannot give interest, because such debts do not carry interest, by the common law:(b) but it may be payable (according to Lord Mansfield) in consequence of the usage of particular branches of trade, or of a special agreement; or, in cases of long delay, under vexatious and oppressive circumstances, if a Jury, in their discretion, shall think fit to allow it. (c) So may rent secured by a nomine poenae, or withheld under vexatious or oppressive circumstances, (as by a rescue, or writ of replevin falsely sued out,) even by the common law, be recovered, in an appropriate action, with recompense for the vexation, under the name of damages;(d) but where no such circumstances, peculiar to rents, exist, the Jury'have no right to give more than the rent-arrear, especially in an action of debt, where the plaintiff is to recover in numero, and where damages are, almost always, if not altogether, nominal only. *And although in one case, (e) it was held that, in an action of debt on a bond, damages may be recovered for more than the amount of the penalty, yet the resolution in that case has been overruled, (f) It is true, interest by way of damages, is given in actions of debts upon judgments ;(g) but there the debt is liquidated by a judgment, and interest is given ratione detentionis debiti. In White v. Sealy,(h) it was decided that, in an action of debt on a bond for the payment of rent, damages could not be recovered beyond the penalty, though the rent-arrearexceeded it. The rule in equity is, that the Court regards the penalty of the bond as the extent of the debt, (i) and though there seems to be some contrariety in the cases on that subject, later decisions seem to concur in this rule, (k) In Lloyd v. Williams, (l) Lord Hardwicke said, a' debt by simple contract does not carry interest in its nature, nor would that Court decree it to be paid; nor is there any general rule that simple contract debts shall carry interest, even where a trust is created for payment of debts generally. And in Ryves v. Coleman, (m) he denied interest on a simple contract debt. So in Tait v. Lord Northwick, (n) where a provision was made by will for payment of interest of debts, it was held the provision did not extend to simple contract debts. In Parker v. Hutchinson, (o) it was said by the Master of the Rolls, that the Courts of Law do not permit interest to be given by way of damages, upon notes payable at a day uncertain, or shop debts. In Boddam v. Ryley, (p) where interest was claimed upon the balance of an account, Lord Thurlow observed, if, according to the argument of the party claiming it, whatever in fact appears to be due on the balance of an account, (where there had been no settlement, or acknowledgment by the debtor, which . raises a contract to pay, and which is the only ground upon which interest is given,) (q)shall carry interest, the rule must go to every debt for goods sold and delivered, which certainly is not the law of England.
As .to interest on arrears of an annuity, which comes nearer to the case of rent-arrear than any other, the Courts *of equity have in some instances given it; as in Litton v. Litton.(r) In that case, it was said arguendo, and not denied, that, if an action of debt had been brought for the annuity, the plaintiff could not, at law, have recovered interest upon the arrears : it was given on the particular circumstances of that case. So in Stapleton v. Conway, (s) In Newman v. Aulding,(t) interest was allowed on a life annuity, secured by bond, in a penalty of 5001. In the Drapers’ Company v. Davis, (u) interest was allowed only from the time the Master’s report was confirmed. The annuitant in that case had been dead seventeen years *739 before that time. In Morris v. Dillingham, (a) it is said, the giving interest for arrears of annuity is discretionary ; and in Batten v. Earnley, (b) it is said, interest is only allowed where there are great arrears, and not for small sums. In that case three years annuity was in arrear. In Sir John Robinson v. Cuming, (c) there was a grant of an annuity by way of mortgage, with a power to enter in case of arrears, and to hold until satisfied. Lord Hardwicke said, there is no instance where the Court has ever allowed interest on the arrears of such an annuity. In Creuse v. Hunter, (d) interest was not allowed on arrears of an annuity in lieu of dower. And in Tew v. Earl of Winterton,(e) it was not allowed, although secured by bond and in bar of dower, and out of productive estates. In the case of The Society for Propagating the Gospel v. Jackson,(f) Bord Thurlow refused interest on arrears of annuity, though the funds were productive. But what was said by Bord Chancellor Talbot, in Ferrers v. Ferrers, comes nearer to the present subject than any other cases. ‘ ‘The arrears of an annuity or rent charge, says his Bordship, are never decreed to be paid with interest, but where the sum is certain and fixed, and also where there is a nomine pcenas, or some penalty upon the grantor, which he must undergo, if the grantee sued at law, and which would oblige him to come into equity for relief, which the Court will not grant, but upon equal terms, and there can be no other but decreeing the grantor to pay the arrears, with interest for the time, during which the payment was withheld. But interest for the *rents and profits of an estate was never decreed yet, the sum being entirely uncertain.”(g)
We come now to the cases in this Court. In Graham v. Woodson, (h) interest was allowed by the High Court of Chancery on the rents in arrear, and that case was affirmed in this Court. But there the Court evidently proceeded upon the ground of the unconscientious conduct of the defendant, Graham, “in endeavouring to defeat the rents altogether,” by first purchasing the •reversion at an under rate, and then surrendering the lease, and thereby delaying the payment. The plaintiffs were infants: they had no power to distrain, the reversion being granted away to another. And if they had had such power, it is highljr presumable from the answer that there was no distress upon the premises, until Graham had surrendered the lease, as he declined working the coal pits for some time. These circumstances present a very different case from that before us. But in Skipwith v. Clinch, (i) the same term, the Court said the plaintiff was not entitled to interest on the rents, (although near twenty years’ rents appear to have been due,) because it was certain he might have distrained; and therefore should not have lain by and suffered the interest to accumulate; and if it was uncertain, the cases relied on by the plaintiff’s counsel, shewed interest is not demandable. • This latter reason applies with peculiar force to the case of Newton v. Wilson. Eor the amount of the rent due was altogether uncertain, rendered so by the departure of the miller and the apportionment of the rent, to which the lessee was entitled, in consequence of that event, and the fraudulent conduct of the lessor, in imposing him upon the lessee as a slave. The Jury gave less than the sum demanded for rent, in numero, and yet gave damages more than equal to the apportionment, if in fact the defalcation from the amount of rent demanded was made on that account. So that they actually mulct the defendant, in damages, at the same moment that their verdict proves they thought him entitled to an abatement of the rent, or rather, to damages for the injury and imposition he had sustained. A solecism not to be supported.
*In the case of Cooke v. Wise, if the latter was disabled from distrain-ing for the rent-arrear, at any time during the continuance of Cooke’s possession, or that of his under-tenants, it was by his own conduct altogether. He, therefore, has not a right to interest for arrears, which, but for his own want of judgment, he might have distrained for.
JUDGE ROANE.
In these two cases in which judgments were rendered by this Court at the last term, it occurred to me, towards the close thereof, that the Court had committed an error touching the point of interest. I mentioned this idea to the Judges in conference, and they agreed to rescind the judgments, and continue the cases until the present term, for reconsideration and revision. I have no wish to vary or depart from the decisions then given, on any other part of the cases: I adopt them as for my present opinion; but, touching the point of interest, I am, on reflection, confirmed in the opinion that the judgments were, in both cases, erroneous.
In the case of Cooke v. Wise, (which was an action of debt for rent,) this Court reversed a judgment of the District Court, affirming one of the Hustings Court, (although the Judges were unanimously of opinion, that the judgment was correct on its merits,) because that judgment “allowed interest, by way of damages, on the amount of the rent due, inasmuch as the appellee had remedy by distress, if he had not deprived himself thereof by his own act.” And in the case of Newton v. Wilson, which was also debt for rent, this Court reversed the judgment of the District Court on two grounds; one of which was, for that “interest was given by way of damages for detention of the debt;” and, in its instruction to the District Court, upon the new trial, directed that “no interest should be allowed by way of damages,” on the sum to be found due for rent as aforesaid.
As the records on which these opinions were delivered, have shewn no special reasons why interest should not have been allowed by the juries respectively; I understand these *decisions to go the *740 full length of affirming that interest for rent is not to be allowed by a Jury in any case whatsoever; the instruction in the last case being, that “no interest should be allowed by way of dam'ages,” I presume, under any circumstances: and this is the proposition which I mean to combat.
X will begin by saying that interest is nothing more than damages; and that damages are peculiarly within the province of a Jury to find or not. In 2 Fonb. 423, it is said, that “since a man is bound in equity not only to perform his engagements, but also to repair all damages that naturally accrue from the breach of them, we ought not to omit treating of these, and especially of interest, which is most frequent of all, it being the common measure, where the contract is for money; though, in its own nature, more uncertain than any other. But it is now fixed to a certain portion of the sum lent; for, to cut off the infinite variety of liquidations and law suits which might be occasioned by the non-payment of money, it was absolutely necessary to settle, by a law, a uniform reparation for all the sorts of damages arising thence,’' &c. and that these damages could “not be made more just or certain, than by fixing at the value of the common profits that may be made of money by a lawful commerce.’’
It is in pursuance of this same idea that when the statute of 3 Hen. VII. c. 10, declares that, on a writ of error, the person against whom it is sued out, “shall recover his costs, and damage for his delay and wrongful vexation in the same, by discretion of the Justice afore whom the said writ of error is sued,” the Court of King’s Bench adopted interest as the measure of the damage, “the action being- for a debt.”(a) The same idea was held by this Court in the case of Asberry v. Calloway, 1 Wash. 74, in which 20 per cent, given against Sheriffs in a certain case, byr act of Assembly, was considered by the Court as damages, though, in the act itself, called “interest.”
Interest then is but a fixed measure of damages; and damages are defined to be a compensation given by a Jury *for an injury or wrong done the party before action brought :(b) now if rent is due at the end of the year, and is not then paid, an injury is done to the landlord, by holding and making a profit on his monej', which ought to be recompensed in damages.
Anciently, distresses were looked upon in no other light than a pledge or security for the paj'ment of rent, but have latterly been improved into a more direct mean of compelling paj'ment. (c) Asunder the former idea a sale for payment of rent could not be effected by distress, but only by an action ; in which case, I presume, it would be admitted, that damages might be recovered. The question is, whether the right to damages or interest is taken away by the addition of á new remedy, by the conversion of the ancient distress into a mean or action for enforcing payment also? Bet the various instances, to be found in our code, in which a new and summary remedy is superadded to the old, and yet does not impair the rights existing under it, answer the question. And if, in the case of a distress, whether the property be replevied by the tenant, or sold by the officer, the principal sum is to be paid with interest, (d) cui bono, shall we say that interest is not to be given in the case of an action? If, in whatever way a distress shall eventuate, under our act, interest is to be given upon the sum due for rent, is it not too much to say, that, in the concurrent remedy by action, interest is under no circumstances to be given? And if, in the former case, interest is to be given under all circumstances, why not permit a Jury to judge of it in the latter, and give or withhold the interest or damages, as to them may appear right and proper? Certainly this last construction is-most beneficial for the tenant, as it gives him a chance, under circumstances, to be exempted from the pa.yment of interest ¿ whereas, under the other idea, the landlord will be compelled, by a just attention to’ his own interest to distrain immediately, in all cases, under pain of losing the interest on his money. That distress, which was anciently only a pledge, and is now-exalted into a concurrent mode of en-forcing payment, will *be made, by this construction, to overthrow and supersede the remedy by action altogether, and subject the tenant in all cases to the more rigorous remedy by distress.
Interest on money being then neither more nor less than damages, as is before said, I hazard little in saying that the power of a Jury, in relation thereto, is, at least, as great as that of a Court of Chancery.
In 4 Vin. 402, it is said, that, as a Court of Chancery cannot settle damages, a breach of covenant must be tried at law. In Cud v. Rutter, (e) which was a bill on a contract for stock fora specific performance of the contract, the Court dismissed the bill, and would neither decree performance nor the difference money in damages, saying, that the complainant should recover his damages at law, wherewith he might buy the stock. In the case of Buxton v. Lister,(f) in which the last case is recog-nised, the Court said, in a similar case,, that the proper remedy was at law, where the complainant might recover damages for the non-performance of the agreement. Various cases might also be readily added in which a Court of Equity, proceeding upon the same idea, have referred the case on the point of damages to.a Court of Law, to settle on an issue of quantum damnifica-tus. So, in this Court, in the case of Eustace v. Gaskins, (g) which was a decree for land and back rents, this Court reversed it, on the ground that the value and profits of the land, which were in the nature of damages, were ascertained by commissioners, of the Court of Chancery.instead of a Jury, and directed an issue for that purpose.
These cases shew that a jury is, at least, as proper a tribunal to decide on interest *741 (or damages) as a Court of Chancery. But the Jury is also more competent on this subject than even the Court of ¡Caw before which it carries on its inquiry. In the case •of M’Call v. Turner, (a) Judge Pendleton said, referring to an opinion of Chief Justice Jay, that he was mistaken in saying that interest was a question of law; that Jay himself had at length admitted that the Jury might decide both the law and fact of the case, comprehending the question of interest; and that he (Mr. Pendleton) ^thought it proper for the Jury to decide what interest, as well •as principal, was due. Judge Fleming, in the same case, admitted it was the province •of the Jury to decide what interest was due; and Judge Carrington gave into the same idea.
In the case of Eddowes v. Hopkins, &c. executors of Harris, (b) it was decided that, although, “by the common law, book debts do not, of course, carry interest, it may be payable by the usage of particular branches -of trade, or by a special agreement, or in cases of long delay, under vexatious and oppressive circumstances, if a Jury, in their discretion, think proper to allow it.” How do we know, under the general verdicts in the cases in question, that circumstances similar to the above did not exist, and were proved to the Juries respectively, justifying the giving interest in these particular cases, although it were to be admitted that, in general, interest on rents is not allowable. Many other cases to the above purport might be readily cited, but I think it unnecessary to quote them.
Having shewn, I trust, that the power of a Jury on the subject of damages generally, (and, in particular, on the subject of interest, which is a question of fact and not of law as aforesaid,) is not only equal, if not paramount, to that of a Court of Equity, but even to that of the Court of haw, I proceed to say, (in general,) that a Court of Chancery (in its discretion) allows interest on rents. In the view I take of the case, I need not be very minute and particular on this point; but in the case of Graham v. Woodson, (c) this Court did give interest on rents under a power said to be discretionary, and under circumstances which appeared to the Chancery (as they may have done to the Juries in question) to make it reasonable: on the other hand, in the case of Skipwith v. Clinch, (d) interest on rents was refused. These cases, without resorting to any others, shew incontestibly, that the Court of Chancery^ in its discretion, and under circumstances, may give or refuse interest; and this is a power which belongs, I think, a fortiori to a Jury. In the exercise of this power by the Court of Chancery, *(which combines the functions of the Court and Jury,) it is as the Jury that the Court acts upon the facts and circumstances; and these belong to a Jury, at least as clearly, in a jurisdiction in which the proper functions of the Court and Jury are kept separate. But it is said that interest ought not to be given, because rents were “anciently payable in spurs, capons. &c. which yield no profit.” It is not denied that this was anciently the case; but the true idea of rent is, that it issues out of the land demised: reddendo inde is the usual form of reservation, and rent is naturally a part of the crops made upon the land itself. But even the detaining of spurs, capons, ora horse, while such detainer is profitable to the tenant, is injurious to the landlord; and this is the true ground of giving damages by a Jury. If, however, such detainer be not profitable to the one, nor injurious to the other, the Jury, in their discretionary power, will re fuse compensation. The case before ns is, however, of rent due in money, the use of which is certainly equal to the interest.
It is a general and true maxim that the uniform forms of pleading and. declaring are good evidence of the law. In Lilly’s Practical Register, p. 185, in a declaration for rent in a lease at will for 501. damages are laid at 501. Ibid. p. 179, in a declaration for 801. rent, damages were laid at 1001. Ibid. p. 1(}8, debt for rent 2801. damages 1001. Ibid. p. 163, debt for rent 301. damages 601. I might increase this list to any extent, but it is unnecessary. I cannot, however, forbear to remark that the magnitude of the sums laid in these cases for damages, compared with the sums sued for, respectively, as rent, reprobates the idea that no interest was to be recovered in those actions.
But wherefore pursue this case on general reasonings? In the case of Ross v. Gill, (e) which was debt for rent, the declaration demanded 4901. for rent, and damages were laid at the enormous sum of 8001. thereby disclaiming the idea, so far as the opinion of the drawer of the declaration can operate, that interest (or damage) was not recoverable in an ^action of debt for rent. The Jury found for the plaintiff 4901. to be discharged by 4201. and assessed his damages at 1301. 16s. 3d. and judgment was rendered for 4201. and the damages found as aforesaid. Now, although these damages bore so great a proportion to the principal sum, and the case was twice argued, as appears from the record, and was much contested on various grounds, both by the bar and bench, the objection to the damages was never taken, or even glanced at by either.
This authority would seem to conclude the present question. There is, however, one idea entertained on this subject, which requires further consideration. It is, that, although the Jury has, under some circumstances, (though not in general,) a right to give interest in the case of rents, it ought to appear to the Court that they rightly gave it in the particular case. What is this but to deprive the Jury of the right to decide upon the whole question of law and fact, which they have an undoubted right to do;(f) and which even Chief Justice Jay, in the famous case of the British debts, eager as he was to give the whole war interest, was not hardy enough to deny them? What is it but to cut up by the roots the power of the Jury to find a general *742 verdict, and compel the Jury to submit to the Court, in the form of a special verdict, a question justly disclaimed by Judge Pen-dleton as belonging to the Court in the aforesaid case of M’Call v. Turner? What is it but to presume, in the case of a general verdict, (like those before us,) that the Jury has transcended its powers, in a case confessedly within its cognisance, and to warrant which presumption there is no fact stated or shewn to the Court, either by the parties or the Jury? On the contrary, X take the true doctrine to be, that the Court will never entertain a doubt concerning any thing which is not submitted to their consideration by a special verdict; but will, on the other hand, intend every thing which can be fairly intended, in order to support the verdict.(a) They should, in the case before us, if the Jury had cognisance of the subject, under any facts or circumstances, intend that such facts or circumstances appeared *to the Jury on the trial; and should, on that ground, sustain the verdict.
The result of my reflection on the cases before us is, that, in the case of Cooke v. Wise, the judgment of the District Court, affirming that of the Hustings Court, ought to be wholly affirmed; and that in the case of Newton v. Wilson, although the judgment ought to be reversed, on the other ground assigned by the Court on the former occasion, it ought not to be reversed on the ground “that interest was given by way of damages for the detention of the debt;” nor ought there to be any instruction given by the Court below, upon the new trial tobe awarded, “that no interest should be allowed by way of damages, on the sum to be found due for the rent as aforesaid.”
JUDGE) FUEMING.
This case of Cooke v. Wise, has been so thoroughly investigated, and so fully stated by the other Judges, that it seems unnecessary for me to add any thing particular on the subject; and I shall only observe that it is laid down as a general principle, that, in an action of debt for rent, interest on the sum due is not demandable, because, say the books, the landlord has his remedy in a summary way, by distress; and in the case of Skipwith v. Clinch, in this Court, interest was denied, although the rent had been 20-years due; because there was, on the leased estate, abundant property of the tenant, whereof distress might have been made, (b) And that case was reviewed, and approved of at the next succeeding term, in the case of Deans v. Scriba.(c) And, to take a case out of the general rule there must appear, I conceive, some misconduct of the tenant, or some special circumstance, to subject him to the payment of such interest; and, as nothing of the kind appears in the case before us, I must, after mature reconsideration, adhere to my former opinion, that the judgment be reversed.
In the case of Newton v. Wilson, there arc stronger reasons, why interest should not have been recovered; to *wit, the deceptious conduct of Wilson, in making the contract with Newton; I am therefore still of opinion, that that judgment should also be reversed, which is the unanimous opinion of the Court, though on a different ground by one of the Judges.
Wednesday, May 17th. Final judgments were given in both causes.
In the case of Cooke v. Wise, the entry was, “that the judgment of the District Court be reversed; that the judgment of the Hustings Court was correct on its merits, but that there is error in allowing interests by way of damages, on the amount of the rent due, inasmuch as the plaintiff, now appellee, as a landlord, had his remedy by distress, if he had not deprived himself of such remedy by his own act;” therefore, &c. that judgment to be also reversed, and' the cause to be “sent to the Superior Court of Daw, directed to be held in Fairfax County, for that Court to set aside the Jury's verdict, and to award a new trial of the issue, unless the appellee shall release the damages assessed by the Jury, and consent to take a judgment for the debt found by the verdict to be due to him, and pay the defendant, now appellant, his costs, expended by him in the said Hustings Court.”
In Newton v. Wilson, the following entry was made: “'that the judgment of the District Court was erroneous, in this, that the Court refused to permit the defendant’s, now appellant’s, evidence to prove that the miller in the declaration mentioned, is a black man, who bad been held as a slave, by the plaintiff, now appellee, and that he, by deed bearing date the 14th of March, 1800, and recorded in the County Court of Buckingham, had actually emancipated the said slave, and that the said miller, so emancipated, shortly after the commencement of the said lease, and before the expiration of the first year, refused to serve the appellant, and actually left his employment, *and would not return to it again; and also in giving judgment for interest assessed by the Jury, by way of damages for the detention of the said debt.” Judgment reversed; verdict set aside; and a new trial awarded; with instruction “that the defendant, now appellant, is to be allowed to give any special matter in evidence, respecting the said miller,” &c. and that “no interest is to be allowed b3r way of damages, on the sum to be found due for the rent.
Note. On the point of the apportionment of the rent, the Judges were unanimous; but on the question of interest for rent-arrear, JUDGE ROANE dissented.

 This opinion was adhered to by Judge Tuckeb in his subsequent opinion. — Note in Original Edition.

 Litt. 5, s. 222; Co. Litt. 147, 148.

 Ibid.

 Ibid. Gilb. Rents, 151, 165.

 Gilb. Rents, 173.

 Ibid. 171.

 Ibid. 177.178.

 Ibid. 180.

 Ibid. 186,187.

 Ibid. 188; Gilb. Et. 280. [2411.

 Gilb. Rent, 189.

 Ibid. 189; Gilb. Et. 12111, note.

 3 Dyer, 212, a.

 1 Dyer, 66, a.

 Gilb. Rents, 189, cites 1 Ventr. 376.

 Vide 2 Saund. 150, n.

 2 Stra. 1089.

 2 Black. Com. 41.

 2 Black. Com. 42.

 Vlowd. 71; Co. litt. 292.b.; 3 Co. 22, a.; 10 Co. 128. a.

 Co. Litt. 96, a.

 3 Bac. Abr. tit. Damages, E. & F.

 TTjicl. F. n. cites 3 Ijeon, 213.

 Co. Litt. 162, a.

 ) Co. Litt. 162, b.

 Hobard, 82, 207; Plowd. 71.

 L. V. edit. 1791, c. 90; 3 Co. 22.

 Hobart, 8.

 1 wash. 87.

 1 Wash. 340.

 l Call, 133.

 Blancy v. Hendrick, 3 Wilson, 205 : 2 W. Bl. 701, S. C.; 1 Esp. 170; 2 Bro. Ch. 3, Bodham v. Rydey; 2 Call, 358, M’Connico, &c. v. Curzen; Ibid. 120, Deans v. Scriba.

 Eddowes v. Hopkins, Doug. 361.

 3 Leon. 213, cited in 1 H. Bl. 542.

 Lord Lonsdale v. Church, 2 T. R. 388.

 Wilde v. Clarkson, 6 T. R. 303; M’Clure v. Dernkiu, 1 East. 436; Mosby v. Johnston, in Gen. Court, Oct. 16, 1787; Call v. Ruffing, 1 Call, 336, same principle.

 2 Saund. 107; 7 T. R. 446.

 Doug. 49.

 2 Fonb. 427, b. 4, c. 1, s. 2.

 3 Bro. Ob. Rep. 492, 496.

 2 Atk. 110.

 Ibid. 440.

 4 Ves. jr. 816.

 3 Ves. jr. 135.

 2 Bro. Cb. Rep. 2.

 1 P. Wms. 653.

 1 P. Wms. 542.

 1 Ves. 428.

 3 Atk. 579.

 2 Atk. 211.

 2 Ves. 170.

 2 P. Wms. 163.

 2 Atk. 411.

 2 Ves. jr. 167; 4 Bro. Ch. 316, S. G.

 3 Bro. Cft. Rep. 489; 1 Ves. jr. 451, S. G.

 4 Bro. Ch. 321.

 Cases temp. Talbot, 2, 3.

 2 Gall, 249.

 2 Gall, 257.

 See Doug. 752, Zink v. Langton, note 3.

 2 Bac. Abr. Gwil. edit. 263.

2 Bl. Com. 9.

 Rev. Code, v. 1, p. 153.

 1 P. wms. 572.

 3 Atk. 383.

 1 wash. 190.

 1 Call, 140.

 Doug. 376.

 1 Call, 253.

 Ibid. 257.

 1 Wash. 87.

 3 Bl. 377 ; 7 Bac. Abr. 3.

 7 Bac. Abr. 7.

 2 Call, 253.

 2 Call, 419.